1
2
3
4
5
6
7
8
9
10

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYLER ASTORGA, an individual,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO; KEVIN BOEGLER, in his individual capacity; and DOES 1-25, inclusive,<br><br>Defendants. | Case No.: 3:21-cv-00463-BEN-KSC<br><br>**ORDER:**<br><br>**(1) GRANTING-IN-PART THE COUNTY'S MOTION TO DISMISS**<br><br>**(2) DENYING THE COUNTY'S MOTION TO STRIKE**<br><br>**[ECF No. 9]** |

## I.    INTRODUCTION

Plaintiff Tyler Astorga brings this action against Defendants the County of San Diego (the "County") and Kevin Boegler ("Deputy Boegler").[1]  Before the Court is the County's Motion to Dismiss and Strike portions of Plaintiff's First Amended Complaint. ECF No. 9.  The Motion was submitted on the papers without oral argument pursuant to Civil Local Rule 7.1(d)(1) and Rule 78(b) of the Federal Rules of Civil Procedure.  *See* ECF No. 14.  After considering the papers submitted, supporting documentation, and

---

[1]    Doe Defendants 1 through 25 were dismissed *sua sponte* in this Court's prior order dated July 6, 2021.  ECF No. 8 at 4.

applicable law, the Court **GRANTS-IN-PART** the Motion to Dismiss, and **DENIES** the Motion to Strike.

## II.   **BACKGROUND**

This case is one of several cases filed in the Southern District pertaining to the Black Lives Matter riot[2] that took place on May 30, 2020, in La Mesa, California.  *See, e.g.*, *Horton v. County of San Diego et al.*, Case No. 3:21-cv-00400-H-BGS; *Segura v. City of La Mesa et al.*, Case No. 3:21-cv-00565-JM-MDD; *Woolsey v. County of San Diego et al.*, Case No. 3:21-cv-00877-BEN-AHG.

### A.   **Statement of Facts**[3]

Plaintiff alleges that on May 30, 2020, he and his friends decided to join in a Black Lives Matter protest taking place in La Mesa, California.  ECF No. 6 (the "FAC") at 3,[4] ¶ 1.  When he arrived in La Mesa, Plaintiff alleges "he was taken aback by the energy and sheer number of people" and "[a]fter some time, [he] and his friends decided to leave the protest area and head home."  *Id.* at 3, ¶ 3.  Plaintiff claims he "arrived at his car around midnight and began driving home."  *Id.* at 3, ¶¶ 3–4.

---

[2]     It is grossly inappropriate for courts to make or express factual findings or conclusions when deciding motions to dismiss.  *See United States v. Nukida*, 8 F.3d 665, 672 (9th Cir. 1993) (explaining that resolution of a question of fact was inappropriate at the motion to dismiss stage); *Michael Grecco Prods., Inc. v. Ziff Davis, LLC*, 830 F. App'x 233, 234 (9th Cir. 2020) (same).  Factual findings or conclusions are within the purview of motions for summary judgment or after trial when the parties have had an opportunity to present evidence and rebut baseless or unfavorable allegations.  The Court uses the term protest in analyzing the County's Motion to Dismiss based on the allegations contained in Plaintiff's First Amended Complaint (the "FAC").  *See infra* Part III.A.2.  However, the Court does not conclude that the events that took place in La Mesa on May 30, 2020, in fact, constituted a protest.

[3]     The majority of the facts set forth are taken from the FAC and for purposes of ruling on the County's Motion to Dismiss, the Court assumes the truth of the allegations pled and liberally construes all allegations in favor of the non-moving party.  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

[4]     Unless otherwise indicated, all page number references are to the ECF-generated page number contained in the header of each ECF-filed document.

While driving his car past the intersection of La Mesa Boulevard and Spring Street, Plaintiff alleges "he yelled out the window, 'Fuck the police,' in the direction of several officers as a final act of protest." *Id.* at 3, ¶ 4. Plaintiff maintains he "did not throw anything" at Deputy Boegler, "did not attempt to hit any officers with his vehicle," was not driving recklessly or in an illegal manner, and that he "was following traffic laws . . . ." *Id.* at 3, ¶ 7.

Plaintiff alleges that Deputy Boegler responded to Plaintiff's statement by shooting "Plaintiff and his vehicle with several metal-projectile beanbag rounds, fired from a shotgun." *Id.* at 3, ¶ 5. Plaintiff alleges that "[o]ne of the rounds struck [him] in the head, lacerating his forehead." *Id.* Plaintiff claims he "is unsure if he briefly lost consciousness" after being struck with a metal-projectile beanbag round, "but can recall that he immediately stopped driving and sort of pulled/rolled over to the side of the road." *Id.* at 3, ¶ 6. Plaintiff alleges that "[l]arge amounts of blood poured from [his] head," and that he "saw the lead-filled sack next to him, which he believed to be the projectile [that was] shot at him." *Id.*

Plaintiff claims he was dizzy and covered in blood, and that his friend drove him to the hospital, where "doctors confirmed [Plaintiff] had suffered multiple lacerations to his head and physical pain caused by a kinetic impact projectile." *Id.* at 4, ¶¶ 9–10. Six months after being hit with the projectile, Plaintiff claims he "still suffers, among other things, permanent scarring on his head, emotional distress, post-traumatic stress disorder and other neurological symptoms." *Id.* at 4, ¶ 10.

### B.   Procedural History

On March 16, 2021, Plaintiff filed his original Complaint pleading the following claims for relief: (1) excessive force against Deputy Boegler and Does 1 through 50 pursuant to 42 U.S.C. § 1983 and his Fourth Amendment rights; (2) failure to properly train against the County of San Diego pursuant to 42 U.S.C. § 1983 and *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978); (3) battery against Deputy Boegler; (4) intentional infliction of emotional distress against Deputy Boegler; (5)

1  violation of the Ralph Act, Cal. Civ. Code § 51.7 (the "Ralph Act"), against Deputy
2  Boegler, the County of San Diego, and Does 1 through 25; and (6) violation of the Bane
3  Civil Rights Act, Cal. Civ. Code § 52.1 (the "Bane Act"), against Deputy Boegler, the
4  County of San Diego, and Does 1 through 25.  *See* ECF No. 1.

5      On June 26, 2021, Plaintiff filed his First Amended Complaint, which alleges the
6  same causes of action but omits one previously named Defendant.  *See* FAC.   On
7  September 9, 2021, the County filed the instant Motion to Dismiss and Strike portions of
8  the FAC.  *See* ECF No. 9 (the "Motion").

## III.  DISCUSSION

9
10     The County seeks to dismiss the claims filed against it pursuant to Federal Rule of
11 Civil Procedure 12(b)(6) and strike Plaintiff's claims for punitive damages pursuant to Rule
12 12(f).  As explained below, the Court **GRANTS-IN-PART** the Motion to Dismiss and
13 **DENIES** the Motion to Strike.

### A.    Motion to Dismiss

14
15     Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed
16 when a plaintiff's allegations fail to set forth a set of facts which, if true, would entitle the
17 complainant to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v.*
18 *Iqbal*, 556 U.S. 662, 679 (2009) (holding that a claim must be facially plausible to survive
19 a motion to dismiss.  The pleadings must raise the right to relief beyond the speculative
20 level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation
21 of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan*
22 *v. Allain*, 478 U.S. 265, 286 (1986)).  On a motion to dismiss, a court accepts as true a
23 plaintiff's well-pleaded factual allegations and construes all factual inferences in the light
24 most favorable to the plaintiff.  *See Manzarek*, 519 F.3d at 1031.  A court is not required
25 to accept as true legal conclusions couched as factual allegations.  *Iqbal*, 556 U.S. at 678.

26     "Generally, unless the court converts the Rule 12(b)(6) motion into a summary
27 judgment motion, it cannot consider material outside the complaint (*e.g.*, facts presented
28 in briefs, affidavits or discovery materials)."  Phillips & Stevenson, California Practice

-4-

Guide: Federal Civil Procedure Before Trial § 9:211 (The Rutter Group April 2020).  Thus, in evaluating a Rule 12(b)(6) motion, review is ordinarily limited to the contents of the complaint and material properly submitted with it.  *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).  Courts may also consider any statements made in a pleading or motion, including concessions made in plaintiff's response to the motion to dismiss as well as in response to any other pleading or motion.  Fed. R. Civ. P. 10(c).

When a motion to dismiss is granted, the court must decide whether to grant leave to amend.  The Ninth Circuit has a liberal policy favoring amendments, and thus, leave to amend should be freely granted.  *See, e.g.*, *DeSoto v. Yellow Freight System, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).  However, a court need not grant leave to amend when permitting a plaintiff to amend would be an exercise in futility.  *See, e.g.*, *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

### 1.   *Immunity from Direct Tort Liability*

The County claims it is immune from suit pursuant to California Government Code sections 815 and 820.2.  Although sections 815 and 820.2 may provide a defense to the state law claims for relief under the Ralph Act and the Bane Act (as discussed *infra*), they do not provide a defense to the federal claims for relief brought under 42 U.S.C. § 1983.

Pursuant to California Government Code section 815, "[a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."  Cal. Gov't Code § 815.  Section 815 eliminated all non-statutory forms of tort liability against public entities in California.  *See Becerra v. Cnty. of Santa Cruz*, 68 Cal. App. 4th 1450, 1456 (1998) (citing Cal. Gov't Code § 815) ("In California, all government tort liability must be based on statute."); *In re Groundwater Cases*, 154 Cal. App. 4th 659, 687 (2007) ("[T]here is no common law tort liability for

1    public entities in California; such liability is wholly statutory.").

2          An exception to section 815 is section 815.2, which allows for vicarious liability of

3    public entities based on the acts or omissions of employees.  *See* Cal. Gov't Code § 815.2

4    ("A public entity is liable for injury proximately caused by an act or omission of an

5    employee of the public entity within the scope of his employment if the act or omission

6    would, apart from this section, have given rise to a cause of action against that employee

7    or his personal representative.").  As such, federal courts have held that public entities can

8    be sued for vicarious liability under California civil rights statutes.  *Gant v. Cnty. of Los*

9    *Angeles*, 772 F.3d 608, 623 (9th Cir. 2014) (explaining in its Bane Act analysis that

10   "[u]nder California law, public entities are liable for actions of their employees within the

11   scope of employment" to the extent their employees are liable); *Pierce v. Cnty. of Marin*,

12   291 F. Supp. 3d 982, 998 (N.D. Cal. 2018) (holding that public entities can be held

13   vicariously liable under the Bane Act); *San Diego Branch of Nat'l Ass'n for Advancement*

14   *of Colored People v. Cnty. of San Diego*, No. 16-cv-02575-JLS-MSB, 2019 WL 329539,

15   at *12 (S.D. Cal. Jan. 25, 2019) (quoting *D.V. v. City of Sunnyvale*, 65 F. Supp. 3d 782,

16   787 (N.D. Cal. 2014)) ("Courts have consistently held that public entities may be held

17   vicariously liable . . . for police officers' violations of §52.1 [the Bane Act]."); *Di-az v.*

18   *Tesla, Inc.*, No. 3:17-cv-06748-WHO, 2019 WL 7311990, at *14 (N.D. Cal. Dec. 30, 2019)

19   (citing the Bane Act and explaining that "[e]mployers can be vicariously liable for the

20   actions of their employees under this section."); *Gonzalez v. Cnty. of Los Angeles*, No. CV

21   08-02177-DDP-RZX, 2008 WL 2951272, at *2 (C.D. Cal. July 28, 2008) (discussing the

22   plaintiffs' civil rights claims, including those under the Bane and Ralph Acts, and

23   explaining that "[p]laintiffs need to clarify whether they are suing the County in its

24   vicarious liability for the actions of its employees . . ." and that they "may not sue the

25   County for direct liability under these statutes.").

26         The County argues it is not directly liable for Plaintiff's claims under the Ralph Act

27   or Bane Act, because it is a public entity.  Motion at 9.  The County cites California

28   Government Code section 815 in arguing that direct common law tort liability has been

abolished.  Motion at 9.  The County maintains that Plaintiff's allegations of "direct liability against [it] do not arise under any 'statute imposing liability' or the 'rigidly delineated circumstances' under which the County may be directly liable." *Id.* at 10.  The County argues that Plaintiff fails to allege the facts necessary to meet each element of these statutory claims, because "[o]nly Deputy Boegler is alleged to have engaged in intentional violent action, and not the County."  *Id.* at 11.

Plaintiff argues that although California Government Code section 815 bars direct liability against a public entity, section 815.2 provides an exception allowing vicarious liability when the entity's employees engage in tortious acts or omissions.  ECF No. 12 (the "Oppo.") at 4.  Plaintiff further argues his allegations are for vicarious liability against the County and "not for any direct liability or liability based on common law." *Id.*  Plaintiff explains the FAC "clearly state[s] that the County 'is liable in *respondeat superior* for the conduct of'" Deputy Boegler.  *Id.* (*citing* FAC at 10, ¶ 50; 12, ¶ 61).

The County replies that Plaintiff is alleging direct liability and not vicarious liability, and that the FAC refutes Plaintiff's vicarious liability theory.  ECF No. 15 (the "Reply") at 7.  The County further argues that "vicarious liability was not the subject of the motion to dismiss" and because "Plaintiff now disavows the allegations in the FAC stating the County is liable on a direct liability theory," dismissal should be granted.  *Id.* at 8.

Reading the FAC in the light most favorable to Plaintiff, the Court finds that Plaintiff's allegations under the Ralph Act and Bane Act support claims for vicarious liability against the County and not direct liability.  As Plaintiff points out, the FAC states the County is liable in *respondeat superior* for Deputy Boegler's conduct, in the course of his employment.  FAC at 10, ¶ 50; 12, ¶ 61.  The FAC also cites section 815.2 of the California Government Code as the basis for vicarious liability.  *See id.*  Furthermore, "[t]he County does not dispute that [it] can be vicariously liable for the acts of its employee, Deputy Boegler."  Reply at 8.  Because the Court finds Plaintiff's FAC plausibly pleads vicarious liability, it is incorrect to dismiss Plaintiff's claims under the Ralph and Bane Acts.  *See Burgess v. Cnty. of San Diego*, No. 21-cv-00616-MMA-MSB, 2021 WL

-7-

1   5810662, at *7 (S.D. Cal. Dec. 7, 2021) (denying a motion to dismiss based on the

2   plaintiff's allegations that the city was liable in *respondeat superior* under the Bane Act).

3          The County also argues that Plaintiff's Ralph Act and Bane Act allegations "fail to

4   state a direct liability claim . . . to the extent that they are based on the same theory as

5   [Plaintiff's] *Monell* allegations—the County's policies and practices." Motion at 11.  The

6   County asserts it is immune from liability pursuant to California Government Code section

7   820.2, which states that public employees are not liable for injuries resulting from

8   discretionary acts or omissions, whether or not the discretion was abused.  *Id.* (citing Cal.

9   Gov't Code § 820.2).   The County further explains section 815.2(b) "extends that

10  discretionary act immunity to the public entity whose employee's conduct is at issue . . . ."

11  Motion 11–12 (citing Cal. Gov't Code § 815.2(b)).

12         Although the issue of immunity can be properly decided on a motion to dismiss, *see*

13  *Steinle v. City & Cnty. of San Francisco*, 919 F.3d 1154, 1162 (9th Cir. 2019), the Court

14  does not find immunity at this stage.  Plaintiff mentions officer discretion when referring

15  to a specific policy in his *Monell* claim allegations, but Plaintiff also alleges a separate

16  claim of excessive force.  *See* FAC at 7, ¶ 25; 4–5, ¶¶ 11–15.  Section "820.2 does not

17  shield liability from government employees who use excessive force in carrying out their

18  duties."  *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 799 (9th Cir. 2018) (citing

19  *Blankenhorn v. City of Orange*, 485 F.3d 463, 487 (9th Cir. 2007)).  Because all reasonable

20  inferences must be drawn in favor of Plaintiff, the Court does not read Plaintiff's Ralph

21  and Bane Act claims as being based on Plaintiff's *Monell* claim regarding the County's

22  policies.  *See Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d

23  938, 945 (9th Cir. 2014).  These claims could just as likely be based on Plaintiff's claim

24  for excessive force.  Therefore, at this stage in the proceedings, the Court will not dismiss

25  Plaintiff's Ralph and Bane Act claims based on California Government Code section 820.2

26  immunity.  Accordingly, the Court **DENIES** the County's Motion to Dismiss Plaintiff's

27  claims under the Ralph Act and Bane Act.

28

2. *Monell Claim for Failure to Train*

"[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691.  Rather, "liability under 42 U.S.C. § 1983 may be imposed on local governments only when their official policies or customs cause their employees to violate another's constitutional rights." *Merritt v. Cnty. of Los Angeles*, 875 F.2d 765, 769 (9th Cir. 1989) (citing *Monell*, 436 U.S. at 691).  "The Supreme Court has made clear that policies can include written policies, unwritten customs and practices, failure to train municipal employees on avoiding certain obvious constitutional violations . . . and, in rare instances, single constitutional violations are so inconsistent with constitutional rights that even such a single instance indicates at least deliberate indifference of the municipality." *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021) (citing *City of Canton v. Harris*, 489 U.S. 378, 387 (1989); *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 405–406 (1997)).  "Analyzing claims against municipal entities for failure to train employees regarding federal constitutional rights is a subsection of the *Monell* analysis." *Abdi v. Cnty. of San Diego*, No. 3:18-cv-00713-BEN-KSC, 2018 WL 6248539, at *4 (S.D. Cal. Nov. 29, 2018) (citing *Monell*, 436 U.S. at 658).  "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citing *Okla. City v. Tuttle*, 471 U.S. 808, 822–23 (1985) (plurality opinion)).

To properly plead failure to train under *Monell*, the plaintiff must plausibly allege: "(1) an inadequate training program, (2) deliberate indifference on the part of the County in adequately training its law enforcement officers, and (3) whether the inadequate training "actually caused" a deprivation of [the plaintiff's] constitutional rights." *Merritt*, 875 F.2d at 770.  To show deliberate indifference, a plaintiff must ordinarily show "[a] pattern of similar constitutional violations by untrained employees." *Connick*, 563 U.S. at 62 (citing *Bryan Cnty.*, 520 U.S. at 409).  There must be some form of "actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights . . . ." *Connick*, 563 U.S. at 61.  "A single employee who was

-9-

inadequately trained is not enough; 'there must be a "widespread practice.""" *Hendrix v. City of San Diego*, No. 20-cv-00045-TWR-NLS, 2021 WL 3892671, at *8 (S.D. Cal. Aug. 11, 2021) (quoting *Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1159 (9th Cir. 2012)). "The standard is deliberately high in these types of cases because applying a less demanding standard would circumvent the rule against *respondeat superior* liability of municipalities." *Abdi*, No. 3:18-cv-00713-BEN-KSC, 2018 WL 6248539, at *4 (citing *Bryan Cnty.*, 520 U.S. at 392).

The County makes several challenges to Plaintiff's *Monell* claim.  First, the County argues Plaintiff fails to plausibly plead "an official practice/custom of using 'excessive force' based on the use of force on the night of the incident."  Motion at 13.  The County explains that because Plaintiff's FAC is based on one alleged incident and cites no other incidents related to the alleged policy, custom, or practice, the allegations fall short.  *Id.* at 14–15.  Second, the County argues that Plaintiff fails to identify an explicit written policy that directed the violation and "instead relies on allegations that an unwritten policy and policy failures caused the excessive force."  *Id.* at 13.  The County further claims Plaintiff fails to plead facts describing the nature of the policy, custom, or practice alleged.  *Id.*  Third, the County argues Plaintiff's FAC provides no facts regarding deputy training, or how any failure to train caused the violation alleged here.  *Id.* at 18.  Fourth, the County argues that "[n]o training is required for any citizen, let alone a peace officer to know that shooting a projectile at someone who was posing no threat is wrong."  *Id.* at 17.  Finally, the County contends that Plaintiff fails to plead the County's "notice that an omission in training or supervision could cause such an occurrence . . . ."  *Id.*

Plaintiff argues the FAC specifically identifies the SDSD Specialty Munitions policy "and the various ways in which it is deficient and thus led to [Plaintiff's] injury."  Oppo. at 6.   Plaintiff contends the allegations describe inadequacies in the policy and the bases for insufficient training, including deficient "guidelines on when to deploy specialty munitions."  *Id.* at 6.  Plaintiff further argues the FAC alleges how certain phrasing suggests a lack of formal training on specialty munitions and "indicate[s] that the County's failure

-10-

to train caused his injuries." *Id.*  Plaintiff also challenges the County's argument that the FAC mentions only one incident, arguing it clearly states that "multiple peaceful protesters were harmed by kinetic impact projectiles and similar . . . weapons fire by SDSD deputies . . . ." *Id.* at 7.  Plaintiff contends these allegations state not just a single "bad act by one officer, but rather a widespread deficiency in training of SDSD deputies." *Id.*

The County replies that although Plaintiff points to the Specialty Munitions policy, the "*Monell* claim is based on what the policy *does not, but should,* say."  Reply at 3.  The County argues the policy is therefore, not one that "directs officers to shoot unarmed drivers of vehicles who do not pose a threat . . . ." *Id.*  The County explains the policy must have directed the excessive force underlying Plaintiff's claim—because the allegations regarding the policy are based on omissions, Plaintiff fails to plead the additional and required facts "supporting official adoption [of the policy] and deliberate choice by the County." *Id.* at 2–3.

Plaintiff's FAC fails to plausibly allege all elements of the County's failure to train under *Monell*.  However, the County is incorrect in many of its assertions.  The FAC specifically points to SDSD's Specialty Munitions policy and describes multiple alleged deficiencies therein, including how officers are not properly trained or held accountable respecting enforcement of the policy.  FAC at 5–7, ¶¶ 17, 24–26.  Plaintiff alleges the policy has insufficient guidelines on the manner in which to deploy specialty munitions, and no restrictions on using these "munitions against someone who is operating a vehicle." FAC at 7, ¶ 25.  Plaintiff further alleges the ambiguous phrasing that "Trained"[5] personnel can deploy "specialty munitions as deemed reasonable and necessary based upon the circumstances of the incident" provides "insufficient guidance" for officers. *Id.*  Plaintiff also alleges that the policy lacks sufficient requirements for documentation, "which allows

---

[5]   Plaintiff also questions the reason for placing the word "Trained" in quotation marks and suggests the possibility "that perhaps there is not actual formal training on specialty munitions," given that the phrase "trained personnel" appears two other times in SDSD policies without the use of quotations. *Id.*; *see also id.* at 7 n.1.

-11-

officers to evade accountability." *Id.* at 7, ¶ 26.  Plaintiff explains the policy only suggests that officers photograph the scene to accurately depict any resulting damage or injury.  *Id.*  Because this is a suggestion and not a requirement, Plaintiff claims the County failed to adequately supervise its officers and "ensure[] compliance with its use of force guidelines."  *Id.*  Plaintiff's allegations, therefore, plausibly plead an inadequate training program.[6]

Although Plaintiff provides detailed allegations regarding inadequacies in officer training, Plaintiff fails to plead that the County's inaction rises to the level of deliberate indifference.  Plaintiff makes a general allegation that the County's failure to train "was deliberately indifferent to [his] Fourth Amendment rights and done with conscious disregard for the dangers of harm and injury to him and others similarly situated." *Id.* at 8, ¶ 27.  But to plead deliberate indifference, Plaintiff must allege a pattern of constitutional violations sufficient to constitute widespread inadequate training, and that the County had notice of such.  *See Connick*, 563 U.S. at 61–62.  Plaintiff alleges that: (1) "[m]ultiple peaceful protestors were harmed by kinetic impact projectiles and similar 'intermediate force' weapons fired by SDSD deputies, which suggests . . . a widespread deficiency in . . . training;" and (2) the County was "aware of the widespread problems with the use of excessive force" and has a widespread history of failing to investigate misconduct and take remedial actions against deputies.  FAC at 6, ¶ 23; 6, ¶¶ 19–20.  These allegations are too conclusory to meet the standard for deliberate indifference.

First, Plaintiff does not plead the number of incidents that occurred or any specific examples, preventing the Court from evaluating the extent of the alleged violations and

---

[6]     The Court also disagrees with the County's argument that no training is required to know that shooting a projectile at a person who poses no threat is wrong.  *See Horton v. Cnty. of San Diego*, No. 21-cv-00400-H-BGS, 2021 WL 2156180, at *4 (S.D. Cal. May 27, 2021) (explaining that by drawing all reasonable inferences in favor of the plaintiff, "[t]he Court rejects the County's contention that no training is required to know that shooting a projectile at someone who was waiting quietly is wrong.") (internal quotations omitted).

whether they form a pattern or widespread practice. [7] *See Bagley v. City of Sunnyvale*, No. 16-cv-02250-JSC, 2017 WL 5068567, at *5 (N.D. Cal. Nov. 3, 2017) (explaining that "two vaguely described incidents are insufficient to support a claim for municipal liability" for failure to train); *NeSmith v. Cnty. of San Diego*, No. 15-cv-00629-JLS-JMA, 2016 WL 4515857, at *16 (S.D. Cal. Jan. 27, 2016) (quoting *Connick*, 563 U.S. at 72) ("Plaintiffs' generalized information on suicide rates in the County's jails is, for purposes of plausibly stating a claim for government entity liability, a step in the right direction. As presented, however, it is too vague to establish the 'pattern of violations necessary to prove deliberate indifference . . . .'"). *See also Est. of Osuna v. Cnty. of Stanislaus*, 392 F. Supp. 3d 1162, 1173 (E.D. Cal. 2019) (holding that a sufficient number of incidents were alleged where plaintiffs described at least three "prior cases in which defendants were either found liable or agreed to pay a substantial monetary sum to resolve excessive use of force claims brought against them."); *Nishimoto v. Cnty. of San Diego*, No. 16-cv-01974-BEN-JMA, 2017 WL 2709742, at *5 (S.D. Cal. June 20, 2017) (finding a pattern of similar constitutional violations for purposes of failure to train where the complaint described seven comparable incidents supported by factual allegations).

Second, the FAC does not allege when or where the multiple peaceful protesters were injured. The only protest mentioned in the FAC is the one that occurred in La Mesa, where Plaintiff sustained his injuries. Based on the allegation that "multiple peaceful protesters were harmed," the reasonable inference that follows is that the protesters

---

[7] The Court notes that a single constitutional violation can rise to the level of deliberate indifference by the municipality. *See Benavidez*, 993 F.3d at 1154 (quoting *City of Canton*, 489 U.S. at 390 n.10.) ("Where, for example, a 'city has armed its officers with firearms[,] ... the need to train officers in the constitutional limitations on the use of deadly force can be said to be 'so obvious,' that failure to do so could properly be characterized as deliberate indifference to constitutional rights."); *Horton*, No. 21-cv-00400-H-BGS, 2021 WL 2156180, at *4 (holding that a single incident of a plaintiff being shot in the chest by a projectile—when the plaintiff posed no threat of harm to anyone—was sufficient to allege a *Monell* claim against San Diego County). However, Plaintiff's FAC and Opposition rely only on the allegation that multiple peaceful protesters were injured, indicating a widespread deficiency in training. *See* FAC at 6, ¶ 23; Oppo. at 7.

referenced were also harmed at the La Mesa demonstration.  This type of contemporaneous harm is generally insufficient to allege a widespread pattern of conduct adequate to put a municipality on notice of deficient training.  *See Canton*, 489 U.S. at 395 (O'Connor, J., concurring in part and dissenting in part) ("[C]ontemporaneous or subsequent conduct cannot establish a pattern of violations that would provide 'notice to the cit[y] and the opportunity to conform to constitutional dictates….'"); *Hursh v. Cnty. of San Diego*, No. 08-cv-02249-BEN-PCL, 2011 WL 2003353, at *3 (S.D. Cal. May 23, 2011) (The "[p]laintiff's assertion that multiple deputies failed to put him in a lower bunk does not establish the requisite pattern . . . .").  All reasonable inferences must be drawn in favor of Plaintiff, *see Retail Property Trust*, 768 F.3d at 945, but the Court is confined to the content of the FAC and cannot assume facts not alleged.  *See Van Buskirk*, 284 F.3d at 980 ("Ordinarily, a court may look only at the face of the complaint to decide a motion to dismiss."); *Jack Russell Terrier Network of N. Ca. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1035 (9th Cir. 2005) ("Although we assume the truth of the facts alleged in the complaint, we cannot assume any facts necessary to the . . . claim that they have not alleged.").

Plaintiff's direct allegation that the County had notice of training deficiencies is also conclusory, because it simply recites that the County was "aware of the widespread problems with the use of excessive force."  FAC at 6, ¶ 19.  Plaintiff does not need to prove notice at this stage, but without more specific examples supported by at least some factual allegations, the Court cannot determine whether a pattern of violations existed to put the County on notice of its alleged failure to train.  *See Hendrix*, No. 20-cv-00045-TWR-NLS, 2021 WL 3892671, at *8 (citations and internal quotations omitted) ("On a motion to dismiss, the plaintiff need not prove that the supervisors had notice that the training on the use of force was inadequate and consciously chose not to implement or improve the training. Rather, the plaintiff must allege notice and conscious disregard. A single employee who was inadequately trained is not enough; there must be a widespread practice.").  *See also Connick*, 563 U.S. at 62 ("Policymakers' 'continued adherence to an approach that they know or should know has failed to prevent tortious conduct by

1  employees may establish the conscious disregard for the consequences of their action—the

2  "deliberate indifference"—necessary to trigger municipal liability.'").

3  Despite the above findings, Plaintiff may be able to amend his FAC to plausibly

4  allege a *Monell* failure to train.  Accordingly, the County's Motion to Dismiss Plaintiff's

5  *Monell* claim against it is **GRANTED**[8] *without prejudice*.

6  ### B.   Motion to Strike Punitive Damages

7  Federal Rule of Civil Procedure 12(f) allows a court to "strike from a pleading an

8  insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

9  Immaterial matters are "those which ha[ve] no essential or important relationship to the

10  claim for relief or the defenses being pleaded."  *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524,

11  1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994) (internal quotation

12  marks omitted).  Impertinent matters "do not pertain, and are not necessary, to the issues

13  in question."  *Id.* (internal quotations omitted).

14  The purpose of a Rule 12(f) motion "is to avoid the expenditure of time and money

15  that must arise from litigating spurious issues by dispensing with those issues prior to trial."

16  *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (internal

17  quotations omitted).  "Motions to strike are generally disfavored and 'should not be granted

18  unless the matter to be stricken clearly could have no possible bearing on the subject of the

19  litigation.'"  *Luxul Tech. Inc. v. NectarLux, LLC*, No. 14-cv-03656-LHK, 2015 WL

20  4692571, at *3 (N.D. Cal. Aug. 6, 2015) (quoting *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352

21  F. Supp. 2d 1048, 1057 (N.D. Cal. 2004)).  The decision to grant a motion to strike

22  ultimately lies within the discretion of the trial court.  *Rees v. PNC Bank, N.A.*, 308 F.R.D.

23

24  [8]     The County argues that Plaintiff's ratification-based *Monell* claim fails, because the

25  FAC contains no "factual allegations regarding any approval or ratification of the claimed

26  unconstitutional action by Deputy Boegler . . . ."  Motion at 19.  Plaintiff argues he is bringing a *Monell* claim based on failure to train and not ratification, rendering the

27  County's Motion to Dismiss on this ground as moot.  Oppo. at 7 n.2.  The Court agrees with Plaintiff but finds the issue moot, because the Court is dismissing Plaintiff's *Monell*

28  claim on other grounds.

-15-

266, 271–72 (N.D. Cal. 2015) (citing *Whittlestone*, 618 F.3d at 973).

The County argues the FAC does not limit its punitive damages to specific Defendants and to the extent Plaintiff seeks punitive damages against the County, they should be stricken. Motion at 20. The County contends that "punitive damages are not recoverable against a public entity under either state law or Section 1983 and thus have no relationship to the claims against the County." *Id.* Plaintiff argues the County's Motion to Strike is unnecessary because Plaintiff does not seek punitive damages against it. *Id.* at 7. Plaintiff explains that reading the "FAC in the light most favorable to him . . . it should be assumed that Plaintiff was properly pleading punitive damages only against the proper party: Defendant Deputy Boegler." *Id.* The Court agrees. Although Plaintiff pleads punitive damages generally in his prayer for relief, *see* FAC at 12, under each specific claim for which he pleads punitive damages, Plaintiff lists only Deputy Boegler (and previously dismissed Doe Defendants). *See id.* at 8–9, ¶ 36; 9, ¶43; 10, ¶ 49. Reading the FAC in the light most favorable to Plaintiff, and given Plaintiff's concession, the Court finds Plaintiff properly pleads punitive damages as to Deputy Beogler and not the County. Accordingly, the Court **DENIES** the County's Motion to Strike.

## IV.   <u>CONCLUSION</u>

The Court rules on the above Motions as follows:

1.     The County's Motion to Dismiss Plaintiff's claims under the Ralph Act and Bane Act is **DENIED**.

2.     The County's Motion to Dismiss Plaintiff's *Monell* claim against the County for failure to train is **GRANTED** *without prejudice*.

3.     The County's Motion to Strike Plaintiff's claims for punitive damages is **DENIED**.

**IT IS SO ORDERED.**

DATED:   May 17, 2022

_____
**HON. ROGER T. BENITEZ**
United States District Judge

-16-